# The Attorney General's Duty to Defend and Enforce Constitutionally Objectionable Legislation

The Attorney General has a duty to defend and enforce both the Acts of Congress and the Constitution; when there is a conflict between the requirements of the one and the requirements of the other, it is almost always the case that he can best discharge the responsibilities of his office by defending and enforcing the Act of Congress.

While there is no general privilege in the Executive to disregard laws that it deems inconsistent with the Constitution, in rare cases the Executive's duty to the constitutional system may require action in defiance of a statute. In such a case, the Executive's refusal to defend and enforce an unconstitutional statute is authorized and lawful.

July 30, 1980

THE CHAIRMAN OF THE SENATE SUBCOMMITTEE ON LIMITATIONS OF CONTRACTED AND DELEGATED AUTHORITY

MY DEAR MR. CHAIRMAN: In your letter of June 25, 1980, you asked that I answer eleven questions posed by you concerning the legal "authority" supporting "the Justice Department's assertion that it can deny the validity of Acts of Congress." I am pleased to respond. I have taken the liberty of setting these eleven questions out verbatim so the context in which my answers are given will be clear. My answers follow several preliminary observations about the form of the questions asked and the general nature of the Department's "assertion" in this matter.

The Attorney General has a duty to defend and enforce the Acts of Congress. He also has a duty to defend and enforce the Constitution. If he is to perform these duties faithfully, he must exercise conscientious judgment. He must examine the Acts of Congress and the Constitution and determine what they require of him; and if he finds in a given case that there is conflict between the requirements of the one and the requirements of the other, he must acknowledge his dilemma and decide how to deal with it. That task is inescapably his.

I concur fully in the view expressed by nearly all of my predecessors that when the Attorney General is confronted with such a choice, it is almost always the case that he can best discharge the responsibilities of his office by defending and enforcing the Act of Congress. That view is supported by compelling constitutional considerations. Within their respective spheres of action the three branches of government can and do exercise judgment with respect to constitutional questions, and the

55

Judicial Branch is ordinarily in a position to protect both the government and the citizenry from unconstitutional action, legislative and executive; but only the Executive Branch can execute the statutes of the United States. For that reason alone, if executive officers were to adopt a policy of ignoring or attacking Acts of Congress whenever they believed them to be in conflict with the provisions of the Constitution, their conduct in office could jeopardize the equilibrium established within our constitutional system.

At the same time, I believe that if Congress were to enact a law requiring, for example, that the Attorney General arrest and imprison all members of the opposition party without trial, the Attorney General could lawfully decline to enforce such a law; and he could lawfully decline to defend it in court. Indeed, he would be untrue to his office if he were to do otherwise. This is not because he has authority to "deny the validity of Acts of Congress." It is because everything in our constitutional jurisprudence inescapably establishes that neither he nor any other executive officer can be given authority to enforce such a law. The "assertion" of the Department of Justice is nothing more, nor less, than this.[1]

I have one further observation. In your letter you state that your request "does not include those situations where the Acts themselves touch on constitutional separation of powers between Executive and Legislative Branches . . . ." Since almost all of the legal authority dealing with this question, from the trial of Andrew Johnson to the arguments of Attorney General Levi in *Buckley* v. *Valeo*, 424 U.S. 1 (1976), deal with separation of powers issues, your limitation is stringent. I will not discuss all the pertinent authorities if you will permit me to note that in this field the historical predominance of separation of powers issues is no accident. I have said that the Executive can rarely defy an Act of Congress without upsetting the equilibrium established within our constitutional system; but if that equilibrium has already been placed in jeopardy by the Act of Congress itself, the case is much more likely to fall within that narrow class.

The traditional debate over the nature and extent of the President's supervisory authority as chief executive provides a good illustration of the phenomenon to which I have just referred. From time to time Congress has attempted to limit the President's power to remove, and thereby control, the officers of the United States. Some of these attempts have been consistent with the Constitution; others have not. In

---

[1] I note that an analogous situation is presented where an individual subject to a court injunction believes that injunction to be unconstitutional or legally invalid. The well-established rule is that such an injunction must be obeyed until it is dissolved or modified on appeal in order to preserve the integrity of the judicial process. *Walker* v. *City of Birmingham,* 388 U.S. 307 (1967). The Court in *Walker,* however, was careful to emphasize that it did not have before it a case in which "the injunction was transparently invalid." *Id.* at 315. If an Act of Congress directs or authorizes the Executive to take action which is "transparently invalid" when viewed in light of established constitutional law, I believe it is the Executive's constitutional duty to decline to execute that power.

every one of these instances, however, it was the Act of Congress itself that altered the balance of forces between the Executive and Legislative Branches; and if the Executive had invariably honored the Act, our constitutional system would have been changed by *fait accompli.* Accordingly, in some of the cases in which the constitutionality of the Act was in doubt, the Executive determined that it could best preserve our constitutional system by refusing to honor the limitation imposed by the Act, thereby creating, through opposition, an opportunity for change and correction that would not have existed had the Executive acquiesced. *See Myers* v. *United States,* 272 U.S. 52 (1926). Inter-branch disputes over other separation-of-powers issues can follow a similar course.

I now turn to your specific questions.

Question 1:   What is the specific authority (if any) deriving from English constitutional history which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

As I have suggested, the Department's "assertion" depends entirely upon the proposition that there are fundamental limitations on the authority of the Legislative and Executive Branches of our government. This, in fact, is the central legal principle in our constitutional system—our system of "limited" government—and it is a principle that the English have *rejected.* Accordingly, English constitutional history is important for our purposes, not because it supports my view that in a system of "limited" government there are powers and duties that cannot be imposed upon executive officers, but because it illustrates how constitutional government can develop towards a radically different model—a model in which there is no fundamental limitation upon legislative power. It is true that there are early English cases that I could cite in my behalf. I am reminded in particular of Coke's judgment in *Calvin's Case,* 7 Co. Rep. 1 (immutable natural law prevents Parliament from separating a subject from the protection of his king). But even though these early precedents enjoyed some vitality on this side of the Atlantic as late as the time of the American Revolution (consider, for example, James Otis' classic attack on the writs of assistance, February 24, 1761, printed in Commager, Documents of American History 45 (5th ed. 1949)), they did not carry the day in their own country.

I should add that I consider the 17th century dispute between Parliament and the Stuart kings over the so-called "dispensing power" to be directly relevant to the questions you have raised. The history of that dispute was well-known to the Framers of the Constitution, and it is clear that they intended to deny our President any discretionary power of the sort that the Stuarts claimed. We must remember, however, that

57

it was largely as a result of Parliament's victory in that matter that the English came to abandon any notion that "fundamental law" limited the powers of the legislative sovereign. This is the very notion upon which our Constitution, and the Department's view of this question, depends. In our system of limited government, unlike the English system, there are some things that the legislature and the officers of the government *cannot* lawfully do.

Question 2:   What is the specific authority (if any) deriving from the Constitutional Convention and other expressions of the Framers which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

The available evidence concerning the intentions of the Framers lends no specific support to the proposition that the Executive has a constitutional privilege to disregard statutes that are deemed by it to be inconsistent with the Constitution. The Framers gave the President a veto for the purpose, among others, of enabling him to defend his *constitutional* position. They also provided that his veto could be overridden by extraordinary majority in both Houses. That being so, an argument can be made that the Framers assumed that the President would not be free to ignore, on constitutional grounds or otherwise, an Act of Congress that he had been unwilling to veto [2] or had been enacted over his veto.

At the same time, I believe that there is relatively little direct evidence of what the Framers thought, or might have thought, about the Executive's obligations with regard to Acts of Congress that were transparently inconsistent with the Constitution; and, indeed, the question remained open for some time after the Constitution was adopted. President Jefferson, for example, writing of the Alien and Sedition Acts in 1804, concluded that each branch had power to exercise independent judgment on constitutional questions and that this was an important element in the system of checks and balances:

> The judges believing the [Sedition law] constitutional, had a right to pass a sentence of fine and imprisonment; because that power was placed in their hands by the Constitution. But the executive, believing the law to be unconstitutional, was bound to remit the execution of it; because that power has been confided to him by the Constitution. The instrument meant that its coordinate branches should be checks on each other.

8 Writings of Thomas Jefferson 310 (1897).

---

[2] The President's failure to veto an unconstitutional Act of Congress does not in itself estop the Executive from challenging the Act in court at a future date, nor does it cure the constitutional defect where the question is one of separation of powers. *See Myers* v. *United States,* 272 U.S. 52 (1926); *National League of Cities* v. *Usery,* 426 U.S. 833, 841 n.12 (1976).

President Jefferson's view was not to prevail, although other early Presidents, including Andrew Jackson, were to express similar sentiments from time to time.

As I have said, I do not believe that the prerogative of the Executive is to exercise free and independent judgment on constitutional questions presented by Acts of Congress. At the same time, I think that in rare cases the Executive's duty to the constitutional system may require that a statute be challenged; and if that happens, executive action in defiance of the statute is authorized and lawful if the statute is unconstitutional. That brings me to your next question.

Question 3:   What is the specific authority (if any) deriving from Supreme Court or other judicial opinions which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

In *Myers* v. *United States,* 272 U.S. 52 (1926), the Supreme Court was asked to decide whether the President had acted lawfully in removing a postmaster from office in contravention of an Act of Congress. The Act provided that postmasters were not to be removed by the President without the advice and consent of the Senate. The case involved a claim for back salary filed by the heirs of the postmaster who had been removed. The action was brought in the Court of Claims under statute that gives that court jurisdiction to hear cases not sounding in tort arising out of conduct by executive officers alleged to be unlawful under the Constitution or Acts of Congress.

When the case came before the Supreme Court, the Solicitor General, appearing for the United States, assailed the attempt to limit the removal power. He argued that the statute imposed an unconstitutional burden upon the President's supervisory authority over subordinate officers in the Executive Branch. Senator Pepper made an *amicus curiae* appearance and argued that the statute was constitutional. The Court ruled that the statute was unconstitutional. More to the point, the Court ruled that the President's action in defiance of the statute had been lawful. It gave rise to no actionable claim for damages under the Constitution or an Act of Congress in the Court of Claims.

In my view, *Myers* is very nearly decisive of the issue you have raised. *Myers* holds that the President's constitutional duty does not require him to execute unconstitutional statutes; nor does it require him to execute them provisionally, against the day that they are declared unconstitutional by the courts. He cannot be required by statute to retain postmasters against his will unless and until a court says that he may lawfully let them go. If the statute is unconstitutional, it is unconstitutional from the start.

I wish to add a cautionary note. The President has no "dispensing power." If he or his subordinates, acting at his direction, defy an Act of Congress, their action will be condemned if the Act is ultimately

upheld. Their own views regarding the legality or desirability of the statute do not suspend its operation and do not immunize their conduct from judicial control. They may not lawfully defy an Act of Congress if the Act is constitutional. This was the teaching of a near sequel of *Myers, Humphrey's Executor* v. *United States,* 295 U.S. 602 (1935); and it is a proposition that was implicit in many prior holdings. In those rare instances in which the Executive may lawfully act in contravention of a statute, it is the Constitution that dispenses with the operation of the statute. The Executive cannot.

Question 4:  What is the specific authority (if any) deriving from opinions of the Attorneys General which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

The formal opinions of my predecessors in this Office establish with clarity the general principles upon which this Department continues to rely in dealing with real or apparent conflicts between Acts of Congress and the Constitution. *See, e.g.,* 40 Op. Att'y Gen. 158, 160, and opinions cited therein. As I have already said, I support those opinions fully. All of them emphasize our paramount obligation to the Acts of Congress. None of them concludes that the Executive must enforce and defend every Act of Congress in every conceivable case, the requirements of the Constitution notwithstanding.

Question 5:  What is the specific authority (if any) deriving from express language in statutes or their legislative history which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

The statutes that define the Office of the Attorney General require him to render opinions upon questions of law, and they require him to conduct litigation in which the United States is interested. None of the statutes either requires or forbids him to inquire into the constitutionality of statutes.[3] As I have said, the traditional opinion has been that the Attorney General, in the due performance of his constitutional function as an officer of the United States, must ordinarily defend the Acts of Congress. As I have said, I subscribe fully to that position.

Question 6:  What is the specific authority (if any) deriving from historic practice prior to the current Administration which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

*Marbury* v. *Madison,* 1 Cranch 137 (1803), was probably the first case in which the Executive made no effort to defend an Act of Congress

---

[3]Quite apart from the provisions of any statute prescribing the duties or the authority of the Attorney General, the Constitution itself provides that the President "may require the Opinion in Writing, of the principal Officer in each of the executive Departments upon any subject relating to the Duties of their respective Offices." U.S. Const. Art. II, § 2, cl. 1.

on a constitutional point. President Jefferson was strongly of the view that Congress had no power to give the Supreme Court (or any other court) authority to control executive officers through the issuance of writs of mandamus. *See* 1 Warren, The Supreme Court in United States History 232, 242–43 (1922). When Mr. Marbury and the other "midnight judges" initiated an original action in the Supreme Court to compel delivery of their commissions, President Jefferson's Attorney General, Levi Lincoln, made no appearance in the case except as a reluctant witness. *See* 1 Cranch 143–44. No attorney appeared on behalf of Secretary Madison. The Court ultimately resolved the case by agreeing and disagreeing with President Jefferson. The Court held that the relevant statute was unconstitutional to the extent that it attempted to give the Supreme Court power to issue writs of mandamus against executive officers, but that there was no general principle of law that would prevent Congress from giving that power to the lower courts.

A second significant historical incident involving a refusal by the Executive to execute or defend the Acts of Congress on constitutional grounds arose during the administration of Andrew Johnson. In defiance of the Tenure in Office Act, which he deemed to be unconstitutional, President Johnson removed his Secretary of War. This action provided the legal basis for one of the charges that was lodged against him by his opponents in the House; and during his subsequent trial in the Senate, the arguments offered by counsel on both sides provided an illuminating discussion of the responsibilities of the Executive in our constitutional system. *See* 2 Trial of Andrew Johnson 200 (Washington 1868). President Johnson was acquitted by one vote.

I will mention a third incident that illustrates an interesting variation on the historical practice. In the midst of World War II, as a result of the work of the House Committee on Un-American Activities, Congress provided, in a deficiency appropriations act, that no salary or compensation could be paid to certain named government employees. These individuals had been branded in the House as "irresponsible, unrepresentative, crackpot, radical bureaucrats." The Executive responded to the statute by taking two courses at once. The Executive enforced the letter of the statute (by not paying the salary of the employees in question), but joined with the employees in a legal attack upon the constitutionality of the relevant provision. When the case came before the Supreme Court, an attorney was permitted to appear on behalf of Congress, as *amicus curiae,* to defend the statute against the combined assault. The Court struck the relevant provision, holding that it was a bill of attainder, and allowed the employees to recover. *United States* v. *Lovett,* 328 U.S. 303 (1946).

Altogether, there have been very few occasions in our history when Presidents or Attorneys General have undertaken to defy, or to refuse to defend, an Act of Congress. Most of the relevant cases are cited

61

either in the foregoing discussion or in the answers that the Senate Legal Counsel has provided to you in response to these same questions.

Question 7: What is the specific support (if any) expressed in any scholarly article or book for the Justice Department's assertion that it can deny the validity of Acts of Congress?

A helpful scholarly discussion of this problem, together with citations to other works, may be found in Edward Corwin's book on the Presidency. Taking full advantage of his scholarly prerogative, Corwin ignores the teaching and, indeed, the holding of *Myers* and concludes that the President, even though he may doubt the constitutionality of a statute, "must promote its enforcement by all the powers constitutionally at his disposal unless and until enforcement is prevented by regular judicial process." 2 E. Corwin, The President, Office and Powers, 1887–1957, 66 (4th rev. ed. 1957).

Question 8: What is the specific authority (if any) deriving from ethical pronouncements which supports the Justice Department's assertion that it can deny the validity of Acts of Congress?

The "ethical" obligations that devolve upon the Attorney General as a member of the legal profession cannot enlarge or contract his duties as an officer of the United States. There is nothing in my obligation to my profession or to the courts that prevents me from discharging my duty either to defend the Acts of Congress or to question them in the rare cases in which that is appropriate.

Question 9: What specific instances are there in which a court or bar association has expressly asserted an ethical duty for government litigators to inquire into the validity of Acts of Congress?

I know of no decision by a court or a bar association that expressly asserts that government litigators have an *ethical* duty either to inquire into the validity of Acts of Congress or to defend them.

Question 10: Has the Justice Department ever sought from Congress legislation to deal with any asserted ethical problem in litigation concerning the validity of Acts of Congress?

No.

Question 11: Has there been any relevant change in the ethical rules in the past few years, since the Justice Department has first begun denying the validity of Acts of Congress?

I know of no recent change in any ethical rule that relates to this problem. Your question assumes that the Justice Department has some new policy in this field. From what I have said in response to your

questions, and from the historical examples I have given, I hope it is clear that we have no new policy. Our policy is an old one.

Sincerely,

BENJAMIN R. CIVILETTI